IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL V. McMANIGAL, JR,

      Plaintiff,

                            3:15-cv-00685-MC

                            OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

_____

MCSHANE, Judge:

      Plaintiff Michael McManigal  filed this action April 22, 2015, seeking judicial review of

the Commissioner of Social Security's final decision denying his application for disability

benefits under Title II and supplemental security income ("SSI") under Title XVI of the Social

Security Act (the "Act").  This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Plaintiff filed his applications for benefits in May 2011.  The administrative law judge (ALJ) determined plaintiff is not disabled.  Tr. 20-30.[1]  For the reasons stated below, the Commissioner's decision is AFFIRMED and this matter is dismissed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012), (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, we review  the administrative record as a whole, weighing both the evidence that supports and that which detracts from the Commissioner's conclusion.  *Davis v. Heckler,* 868 F.2d 323, 326 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.,* 740 F.3d 519, 523 (9th Cir. 2014)(quoting *Reddick v. Chater,* 157 F.3d 715, 720-21 (9th Cir. 1996)).

---

[1]"Tr." refers to the Transcript of Social Security Administrative Record (# 11) provided by the Commissioner.

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R.§§ 404.1520, 416.920. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

At step two, the ALJ found plaintiff's "diabetes mellitus, degenerative disc disease, major depressive disorder with psychotic features, anxiety disorder not otherwise specified, [and] obesity" qualified as "severe" impairments under the regulations. Tr. 22.

The ALJ found plaintiff had the residual functional capacity to perform light work, except he can never climb ropes, ladders, and scaffolds. He can frequently climb ramps and stairs. He can occasionally kneel, crouch, and crawl. The claimant can perform simple routine and repetitive tasks consistent with unskilled work. He can perform low-stress work, defined as work requiring few decisions and changes. Plaintiff can tolerate superficial contact with co-workers regarding trivial matters but cannot tolerate public contact. He can have occasional contact with supervisors. Plaintiff can perform work at a regular pace, but not a strict production rate pace. Tr. 24-25. A vocational expert testified that a person with the RFC as stated by the ALJ could work as a cleaner, housekeeping, or laundry worker. Tr. 29. The ALJ determined plaintiff was not disabled under the Social Security Act.

Plaintiff argues the ALJ erred in (1) assessing Plaintiff's credibility; and (2) rejecting the opinion of the examining psychologist and failing to develop the record with respect to the examining psychologist.

## I. Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 ((th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, "' the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider...ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms...other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284.

## A. Plaintiff's August 8, 2011 Adult Function Report

Plaintiff completed an Adult Function Report in which he stated he had daily thoughts of suicide and had trouble going out in public for fear of being judged. Tr. 239. Plaintiff said he had "severe back pain because of arthritis and my weight." *Id.* He had dizziness and headaches from medications and pain in the knees.

Plaintiff's daily activities include stretching, exercise, and chores around the house including vacuuming, dishes, laundry, lawn mowing, and washing the dog. He watches movies, plays video games, and visits with friends. Tr. 240. Plaintiff stated he has trouble falling asleep

Page 5 - OPINION AND ORDER

because of pain and racing depressed thoughts.  He prepares simple meals daily over 30 to 45 minutes.  Tr. 241.  Plaintiff does laundry and dishes about once a week, and needs help maintaining household chores.   He tries to get help with mowing the lawn, and goes out with friends so that he does not have to drive.  Tr. 242.  He grocery shops about once a week for about an hour.

Plaintiff has a weekly game night with friends, and has friends over two or three days a week.  His memory and concentration are impaired by medications, and he becomes stressed when around people for fear of being judged.  Tr. 244.   He can walk about one quarter mile before requiring 15 minutes rest.

### B. Plaintiff's July 8, 2013 Testimony

Plaintiff testified he stopped working when Sunshine Pizza, in Scappoose, Oregon closed. Tr. 42.  Plaintiff was offered a job at a sister restaurant, Sunshine Pizza in St. Helens, and he stated:

> But I knew by the - what I did out there at Sunshine, it's got loose-
> it's not really a job job.  It was very, you know, hang out with friends
> and, you know, make a couple of pizzas here and there, wash some
> dishes.  It wasn't a job.  It was occupy time and make a little bit of
> money, so I knew I couldn't work when I went out to Sunshine with-
> you know, in the town.  I knew there was going to be a lot of people
> there and it was going to be real work and so I could not, you know,
> transition to the one in Saint Helens.

Tr. 42.

Plaintiff worked when the restaurant was not busy.  He prepared vegetables, made pizzas, and washed dishes.  Tr. 43.  Plaintiff was one of three employees at Scappoose Sunshine Pizza. There are about 20 employees in the St. Helens' Sunshine pizza restaurant.

Page 6 - OPINION AND ORDER

Plaintiff testified that he cannot work because:

> I have severe back pain and coupled with that I have severe
> depression. Daily, daily suicidal thoughts go through my head.
> My therapist called it a suicide reel that I tried to distract myself
> from. You know, with, well, watching TV or playing a video
> game or doing some sort of chore or something around my
> house. But that doesn't always work. I get locked up in my
> room where I just - I don't want to deal with the public or the
> people or even friends. This last week has been kind of hard,
> because all my friends are worried about me going - coming to
> this hearing, so they've been coming over to my house a lot, and
> that actually has been kind of grinding on me, a little bit, because
> I don't like people a whole lot. I'd rather be away from them and
> not have to deal with the social stigma and the social stuff of it
> all. I get, you know, nervous and locked up in situations where I
> just don't - I don't know how to deal with people and acts and
> how things are going. Along with that, my - with my back pain,
> will increase as the day goes on, as I'm either sitting, standing,
> or moving.

Tr. 46.

Plaintiff has had back pain since high school. His back hurt when he worked at Sunshine

Pizza but "we had a lot of time we were just sitting around, talking, you know, just sitting there.

So, it didn't hurt as much, you know, just sitting there all the time . . . .Bending and stooping

tends to hurt." Tr. 47. Plaintiff gets a burning pain down his right leg.

The treatment plan for Plaintiff's back problem is to continue stretching and to lose

weight. He takes 30 milligrams of morphine three times a day, ten milligrams of hydrocodone

three times a day, and two Naproxen. The medications relieve most of his pain. Tr. 49. His

insulin-dependent diabetes is well controlled. He is morbidly obese, and uses a C-PAP for sleep

apnea.

One to two days a week Plaintiff does not leave his room. Tr. 52. He testified he "cannot deal with the people and the places and things out there." Tr. 52. After his mother died in 2000 he "just kind of shut down for awhile," and family members moved in with him to help him transfer the house into his name, pay the bills, and clean. Plaintiff has improved since then, but his friends come over and do dishes, laundry, and mowing. He can mow for 20 to 30 minutes before he has to stop and lie down, but he gets nervous thinking of all the people in the street. Tr. 53. He takes Celexa and it "balances things out a bit." Tr. 55.

Plaintiff saw a mental health counselor for several months in 2011 and 2012 but stopped going when he would have to start with a new counselor. Tr. 55. On the days when he feels better, Plaintiff tries to keep himself occupied by playing with his dog, cleaning up the house, playing video games, watching television, or reading a book. Tr. 57. He plans ahead for trips to the grocery store and has a friend drive him and act "as a buffer" while he shops. *Id.* Plaintiff tries to organize his outings so he only has to go out once a week.

Plaintiff left his last job after an altercation with a co-worker and received short term disability payments. His father and his friends help him pay his bills. His home is in foreclosure for unpaid property taxes. Tr. 61. Plaintiff testified he feels judged when people look at him, and he "feel[s] belittled just by them looking at me or walking by or, you know, just anything. I don't want - I have problems dealing with people in general and I feel like I've always been ridiculed and belittled by people and it's just what I've come to expect from strangers or, you know, neighbors sometimes, people on the streets." Tr. 62.

Plaintiff testified he might be able to work about one half of a day but then "my back is going to be screaming at me and I'm going to have to be, you know, wanting to stretch out, lay

Page 8 - OPINION AND ORDER

down, put my feet up, anything that would take the pressure off my back, because sitting down won't do it. It would have to definitely be, you know, a laying position with my feet up type of thing to take the pressure off my lower back." Tr. 63. Plaintiff's father was physically and mentally abusive, and Plaintiff avoids adult males. Tr. 65. Plaintiff smokes marijuana daily. Tr. 68.

**C. The ALJ's Determination**

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible. Tr. 25. The ALJ cited the treatment record and Plaintiff's functioning as inconsistent with his assertion of debilitating symptoms.

The ALJ found the objective medical evidence did not support Plaintiff's allegations. Tr. 25-26. Plaintiff alleged concentration and memory problems, difficulty getting along with others, and difficulty going out in public for fear of being judged. He reported difficulty lifting, squatting, bending, standing, walking, kneeling and climbing stairs. Tr. 244.

Regarding Plaintiff's physical impairments, physical examinations revealed some tenderness along the upper right lumbar muscles and decreased extension, lateral bend, and left rotation. Tr. 343, 405. Physical examinations were otherwise unremarkable, with full range of motion in Plaintiff's extremities; full muscle strength; negative straight leg raises; no tenderness to palpation of the lumbar and hip musculature; intact reflexes; and a normal gait. Tr. 25-26, 318, 327, 343, 504, 422, 486, 490, 500. Plaintiff was able to walk on his heels and toes. Tr. 327. Diagnostic imaging results showed no acute abnormalities in Plaintiff's back. Tr. 25-26, 424, 490. Specifically, x-rays of Plaintiff's lumbar spine in November 2010 revealed multiple "mild" degenerative changes in the lumbar and low thoracic spine. There was no evidence of fracture or

Page 9 - OPINION AND ORDER

misalignment of the vertebra, the superior sacrum was unremarkable, and the vertebral body heights, disc spaces, and facet joints were maintained. Tr. 369, 424. In addition, x-rays of Plaintiff's knees showed no fracture, dislocation, osseous abnormalities, joint effusion, or soft tissue damage. Tr. 368. On this record, the ALJ properly found Plaintiff's complaints of disabling physical limitations not supported by the medical evidence.

Mental status examinations found Plaintiff appeared sad and depressed, displayed dysphoric affect, and endorsed ruminative and suicidal thoughts. Tr. 298-01. He was also observed to be friendly, cooperative, alert and oriented; he maintained appropriate eye contact, with normal speech, intact memory, good insight and judgment, intact fund of knowledge, and logical thought processes. Tr. 297-98, 313, 317, 500. Plaintiff's attention and concentration were "[w]ithin [r]easonable [r]ange." Tr. 298.

Plaintiff had mental health counseling with Columbia Community Mental Health from Arin A. Clark, Q.M.H.A. W., between August 2011 and February 2012. Tr. 388-99, 385, 501. On February 9, 2012, Plaintiff reported ongoing issues with his foster son, but his "depression had lessened and he may even be able to look for a job in the future." Tr. 385. On February 23, 2012, Plaintiff reported he had met his treatment goals and no longer required counseling. "Client stated he was very busy with his foster son and too busy to be suicidal or depressed at the moment." Tr. 501. On this record, the ALJ's determination that the evidence does not support Plaintiff's assertion of disabling mental limitations is supported by substantial evidence. The ALJ's determination that Plaintiff is not fully credible as to his limitations is supported by clear, convincing, specific and legitimate reasons and substantial evidence.

**II. The Examining Psychologist Trudy Iredale, Ph.D.**

Page 10 - OPINION AND ORDER

*Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1);* 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n. 2.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

In December 2011 Dr. Iredale examined Plaintiff and completed a psychodiagnostic assessment.  Tr. 311-16.  When asked why he is unable to work Plaintiff said he has depression and diabetes.  Tr. 311.  Plaintiff reported difficulty dealing with people, and said "contact with the public is difficult, especially unfamiliar people."  *Id.*  He reported he had degenerative disc disease which causes pain at an eight or nine out of ten without medication and a five or six out

of ten with medication. Plaintiff reported anxiety and avoiding crowds for fear of being judged. Tr. 312. He took medication for depression, and was in counseling, but reported depression at a severity of ten out of ten daily. He described daily thoughts of suicide and trouble sleeping. Plaintiff said he has seen "wisps of shadows" and "can make out voices in white noise" such as fans or the shower. Tr. 312. He used to drink alcohol, but had been sober one to two years. He last smoked marijuana a year ago.

Plaintiff was adequately groomed, cooperative, friendly, and appeared motivated to provide accurate responses. Tr. 313. His affect was dysphoric, he incorrectly identified the date, but he made good eye contact, displayed linear thought process and appropriate thought content, performed three step commands and serial sevens accurately, and did not appear distracted. Tr. 313-14. Plaintiff demonstrated good memory, adequate fund of knowledge, and good abstract reasoning.

Dr. Iredale diagnosed major depressive disorder, severe, with psychotic features; alcohol abuse, in full sustained remission; cannabis abuse, in full sustained remission; and anxiety disorder not otherwise specified, mild. Tr. 314-15. She assigned a GAF score of 34. Dr. Iredale noted:

> [Claimant] is intellectually capable of understanding and following simple as well as reasonably complex instructions, though concentration may be impaired at times due to severe depression. He has good social skills but avoids people which may interfere with job expectations. He does not appear to be easily distracted or have impaired attention span but he is certainly preoccupied with depressive and anxious thoughts. His medical conditions may also interfere with employment. At this time, he appears capable of managing his funds.

Tr. 315.

The ALJ noted Dr. Iredale's report and gave it "significant weight." Tr. 27. The ALJ expressly noted that Dr. Iredale "opined that [Plaintiff's] concentration may be impaired at times due to severe depression." Tr. 27. Plaintiff contends the ALJ erred by failing to fully and fairly develop the record by failing to quantify the extent and frequency of the concentration impairment. Plaintiff contends that because Dr. Iredale assessed a GAF score of 34, indicating severe impairment, the ALJ should have sought clarification of the extent and frequency of Plaintiff's diminished concentration.

The ALJ reasonably rejected the GAF score. At the time of Plaintiff's mental assessments, the GAF scale was used to report a clinician's subjective judgment of the patient's overall level of functioning. *See,* Am. Psych. Ass'n., Diagnostic & Statistical Manual of Mental Disorder 31-34 (4th ed., text revision 2000)(DSM-IV-TR). The Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) abandoned the GAF scale in favor of standardized assessments for symptom severity, diagnostic severity, and disability. Am. Psych. Ass'n., Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013). It was recommended the GAF be dropped from DSM-V for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. *Id.*

The ALJ properly discounted the GAF scores because the scores include many factors, many of which have no bearing on occupational functioning. A GAF score reflects the evaluator's subjective judgment about the person's symptom severity and psychological, social, and occupational functioning. *See* DSM-IV-TR at 32. If an individual's "symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two."

*Id.* At 33. Because a low GAF score may have been based on an individual's self-reported symptomatology or reflect difficulties in a wide range of functional areas, the ALJ's determination to give those scores little weight is supported by substantial evidence.

The ALJ's duty to develop the record further is triggered when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). The record is not ambiguous. On December 13, 2011 psychological consultant Megan Nicoloff, Psy. D., reviewed the medical record , including Dr. Iredale's opinion, and found Plaintiff moderately limited in the ability to maintain attention and concentration for extended periods. Tr. 86. In February 2012 Paul Rethinger, Ph.D., reviewed Plaintiff's medical records and agreed with Dr. Nicoloff. Tr. 112, 115. The ALJ noted both opinions. Tr. 27-28. Moreover, any error is harmless because the ALJ considered Plaintiff's concentration complaints when formulating Plaintiff's RFC. Plaintiff does not identify any functional limitation arising from a moderate impairment of concentration that is not adequately accommodated by the RFC's limitation to "simple routine and repetitive tasks consistent with unskilled work, and "work requiring few decisions and changes." Tr. 24.

## CONCUSION

The Commissioner's decision is supported by substantial evidence. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated this 27 day of July, 2016.

Michael McShane
United States District Judge

Page 14 - OPINION AND ORDER